**NOT FOR PUBLICATION**                                    **CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                  :

ALPHONZA ROSS, JR.,                   :

                   :

          Plaintiff,      :

                   :      Civil Action No. 08-4980

                   :

         v.           :

                   :      **OPINION & ORDER**

MICHAEL J. ASTRUE,         :

COMMISSIONER OF SOCIAL SECURITY,  :

                   :      Dated:  November 24, 2009

         Defendant.    :

_____:

**HOCHBERG, District Judge:**

      This matter comes before the Court upon Plaintiff Alphonza Ross's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended.  42 U.S.C. § 405(g).  The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

**I.  BACKGROUND**

**A.**    **Plaintiff's Medical And Vocational History**

      Plaintiff is a 48-year-old man with two years of college education.  (Tr. 69, 165, 184.)  Since college, he has held several jobs, most recently working as a housekeeper in a hospital.  (Tr. 178, 191, 426.)  On August 1, 2001, while moving tables and chairs at his workplace, Plaintiff injured his back, and has not returned to work since.  (Tr. 296, 514.)  He alleges that he became

1

disabled on that date, based on the resulting pain and functional limitations.  (Tr. 178.)  He subsequently alleged mental limitations due to depression.  (Tr. 396.)  The Court will address the relevant medical history of both the physical and mental impairments in turn.

      1.    <u>Physical Impairments</u>

Following his back injury, Plaintiff was diagnosed with a L5-S1 herniation with an annular tear and lumbar radiculitis.  (Tr. 299-300.)  Plaintiff's treating physician, Dr. Bryan J. Massoud, M.D., examined Plaintiff several times between August and December 2001.  Over that period, Dr. Massoud observed an abnormal gait, a reduced range of motion of the lumbar spine, and neurological abnormalities, but noted that Plaintiff possessed intact motor and sensory functions, symmetrical reflexes, a full range of motion in his arms and legs, and no tenderness, instability or abnormal muscle tone or strength.  (Tr. 287-93, 301-10.)  Because he experienced only limited recovery and continued back pain, Plaintiff opted for back surgery.  (Tr. 285.)  On January 15, 2002, Plaintiff received a laminectomy-discectomy at the L5-S1.  (Tr. 253-59.)

Following the surgery, Dr. Massoud observed Plaintiff to be "improving slowly as expected" during a course of physical therapy, from January through July 2002.  (Tr. 281.)  Throughout that period, Plaintiff complained of back pain and exhibited limited lumbar range of motion and negative bilateral straight leg raises, but had intact manumotor testing, and symmetrical reflexes, with X-rays showing no complications from the surgery.  (Tr. 276-83.)

On November 12, 2002, a physical therapist and biomechanist at Kinematic Consultants, Inc. examined Plaintiff, performing a "kinetic functional capacity evaluation," which consisted of tests on Plaintiff's ability to lift, balance, walk, push and pull, with the consultants monitoring the consistency and validity of Plaintiff's efforts.  (Tr. 336-47.)  The examiners reported Plaintiff's

ability to lift up to 10 pounds occasionally, and up to five pounds frequently, and his ability to push or pull 18 to 21 pounds.  (Tr. 347.)  The consultants concluded Plaintiff was capable of performing sedentary work if allowed periodic 10-minute postural breaks.  Id.  The examiners also noted Plaintiff's "submaximal efforts" in the examination, noting results "compatible with symptom magnification."  (Tr. 346.)

As part of his claim with the Social Security Administration, Plaintiff completed a November 25, 2002 "Pain Report."  (Tr. 204-19.)  Therein, Plaintiff described "severe" lower back pain, and his inability to control the pain with medication.  (Tr. 205.)  Plaintiff reported that he received guests at home, could use kitchen appliances to prepare food, and could bathe, dress, and travel outside his home, with assistance.  (Tr. 212-18.)

Dr. Massoud examined Plaintiff again in July 2004, September 2004, and April 2005.  (Tr. 465-69.)  Plaintiff described to Dr. Massoud his continued back pain, including his difficulty with sitting, standing, and in performing activities of daily life.  (Tr. 465.)  Upon examination, Dr. Massoud observed no complications from Plaintiff's back injury, noting that Plaintiff was in no acute distress, and had a full range of motion, with no tenderness or instability, and normal muscle tone and strength.  (Tr. 467.)  In April 2005, Dr. Massoud recommended that Plaintiff begin five weeks of "light duty" work, consisting of an eight-hour workday with "frequent breaks for standing and stretching."  (Tr. 465.)  He also recommended that Plaintiff be restricted to lifting for a maximum of two hours, lifting no more than 10 pounds.  Id.

From November 2005 to September 2006, Dr. Massoud evaluated Plaintiff at least four more times.  (Tr. 458-63, 488-89.)  Dr. Massoud held to his recommendation that Plaintiff remain on permanent light duty work, and recommended a continued course of pain management and

3

"conservative followup [and] medications." (Tr. 459.) On September 28, 2006, Dr. Massoud discharged Plaintiff from his care. (Tr. 489.)

Plaintiff's most recent physical examinations on record occurred between September and November 2006. (Tr. 308, 483-87, 490-94, 506-08.) Dr. Marcella Dicovskiy examined Plaintiff in September 2006 and May 2007, noting his complaints of back pain, and finding mild to moderate tenderness in the cervical and lumbar spine, with reduced range of motion. (Tr. 506-08.) However, she noted that the pain was limited to the back, that the cranial nerves were grossly intact, that Plaintiff had no sensory or motor deficits, that he exhibited symmetrical deep tendon reflexes and a normal gait, and that he was in no acute distress. (Tr. 506-08.) Dr. Vijaykumar Kulkarni, M.D. conducted a Workers' Compensation examination in November 2006, also noting a normal gait, but noting that Plaintiff's "orthopedic disability" remained "100% of total." (Tr. 486.)

 2.   Mental Impairments

Dr. Bruce Johnson, M.D., a psychiatrist, performed a Workers' Compensation examination of Plaintiff on September 23, 2002. (Tr. 323-26.) Noting Plaintiff's complaints of depression, disinterestedness, and persistent sadness, Dr. Johnson diagnosed Plaintiff with major depressive disorder and permanent psychiatric impairment at 30% of total, citing the August 2001 back injury as its "proximal cause." (Tr. 325-26.)

Dr. Paul F. Fulford, Ph.D., a consultative examiner, examined Plaintiff in January 2003. (Tr. 348-50.) Dr. Fulford reported Plaintiff's claims of "auditory hallucinations, suicidal ideations, a history of suicide attempts, and problems sleeping and problems with energy." (Tr. 350.) Dr. Fulford observed that Plaintiff exhibited mildly impaired concentration and auditory

recall, but that he exhibited good mental control, fair computation ability, intact abstract thinking, and was able to follow simple commands without difficulty.  (Tr. 349-50.)  Dr. Fulford diagnosed Plaintiff with major depression, but deemed Plaintiff "competent to handle benefits."  (Tr. 350.)

Dr. J. Shapiro, Ph.D., a state agency psychiatrist, reviewed Plaintiff's medical records on February 5, 2003.  (Tr. 359-74.)  Dr. Shapiro indicated that Plaintiff exhibited major depression, but that the impairment did not satisfy the agency's criteria for an affective disorder.  (Tr. 362.) The result of Dr. Shapiro's evaluation was a residual functional capacity ("RFC")[1] assessment that Plaintiff could do "simple repetitive work," based on his ability to follow simple commands without difficulty, and based on his good mental control.  (Tr. 374.)

Plaintiff's most recent mental evaluations took place in November 2006 and October 2007, completed by Drs. Cheryl Wong, M.D., and Carlos Dicovskiy, M.D., respectively.  (Tr. 490-94, 498-99.)  Dr. Wong examined Plaintiff as part of his Workers' Compensation claim and concluded that Plaintiff had major depressive disorder, secondary to chronic pain, "with permanent psychiatric impairment estimated at 30% of total."  (Tr. 493.)  Taken with the physical ailments, Dr. Wong concluded that Plaintiff was "totally disabled."  Id.  However, in his November 2007 examination of Plaintiff, while Dr. Dicovskiy noted Plaintiff's anxious mood and "fair to poor" impulse control, he also noted that Plaintiff was alert and oriented, and noted Plaintiff's "clear" speech, "fair" insight and judgment, and a "logical" thought process.  (Tr. 499.)

**B.    Procedural History**

Plaintiff filed a claim for disability benefits on June 5, 2002.  (Tr. 165-67.)  Plaintiff

---

[1]  A claimant's RFC is "the most [the claimant] can still do" in a work setting, despite physical and/or mental limitations, considering all relevant evidence in the record.  20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2).  If the claimant has more than one impairment, the Commissioner must consider all medically determinable impairments together.  Id.

alleged physical disability since August 1, 2001, when he sustained his workplace injury.  (Tr. 165.)  On September 16, 2002, Plaintiff filed a claim for Supplemental Security Income, based on the same physical disability.  (Tr. 379.)  Plaintiff's claims were denied initially.  (Tr. 116-21.) Filing a request for reconsideration, Plaintiff alleged mental disability based on depression, in addition to physical disability.  (Tr. 396.)  The request for reconsideration was also denied, and a request for a hearing was timely filed.  (Tr. 130-32, 393.)  A hearing was held before Administrative Law Judge ("ALJ") Irving Fliegler on August 9, 2004, with Plaintiff, represented by counsel, testifying at the hearing.  (Tr. 64-113.)

ALJ Fliegler issued a partially favorable decision on December 16, 2004, finding that Plaintiff was physically disabled from August 1, 2001 until the functional capacity evaluation on November 12, 2002.  (Tr. 63.)  In making his determination, the ALJ relied on that evaluation's finding that Plaintiff was capable of performing the requisites of sedentary work as of that date. (Tr. 59.)  ALJ Fliegler found Plaintiff's alleged mental impairment to be non-severe at all relevant times, disqualifying it as a basis on which to award benefits.  (Tr. 61.)  After exhausting his administrative remedies, (Tr. 4-6, 33-40), Plaintiff sought review in this Court.

On March 27, 2007, the Court affirmed the favorable portion of ALJ Fliegler's decision, but remanded for further deliberation on the issue of mental impairment.  (Tr. 429-30.) Acknowledging that Plaintiff was found to be disabled from August 1, 2001 through November 11, 2002, the Appeals Council limited the issue on remand to Plaintiff's disability after November 11, 2002.  (Tr. 438.)

A supplemental hearing was held before ALJ Michal L. Lissek on September 6, 2007. (Tr. 416.)  On December 16, 2007, ALJ Lissek issued a decision finding that though Plaintiff's

back and mental impairments prior to November 12, 2002 established disability, Plaintiff ceased

to be disabled as of November 12, 2002, and was capable of other work on that date.  Id.  On June

26, 2008, Plaintiff sought Appeals Council review of ALJ Lissek's decision.  (Tr. 403-05.)  The

Appeals Council denied the request, making ALJ Lissek's decision the "final decision" of the

Commissioner.  (Tr. 400.)  Plaintiff initiated this action on April 6, 2009.

**C.     The Continuing Disability Standard And The Decision Of The ALJ**

      1.    The Statutory Standard For A Continuing Disability

      A benefit recipient, like Plaintiff, may subsequently be deemed ineligible for benefits if it

is determined that his disability has ceased, when that determination is supported by substantial

evidence of medical improvement, and the claimant is able to engage in substantial gainful

activity.  42 U.S.C. § 423(f)(1).  To determine whether a disability has ceased, the Commissioner

applies the following sequential analysis prescribed by the Social Security regulations:[2]

- Step One: Substantial Gainful Activity.  The Commissioner must first determine whether the claimant is engaging in substantial gainful activity.[3]  If the claimant is performing substantial gainful activity, she is no longer disabled.  20 C.F.R. § 404.1594(f)(1).[4]

- Step Two: Severe Impairment.  At Step Two, the Commissioner must determine whether the claimant has an impairment or combination of impairments meeting or equaling the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If the claimant does, the disability continues.  20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i).

- Step Three: Medical Improvement.  Next, the Commissioner must determine whether

---

[2]  20 C.F.R. §§ 404.1594(f) (assessing medical improvement in disability claims), 416.994(b) (medical improvement in Supplemental Security Income claims); see also Reefer v. Barnhart, 326 F.3d 376, 378 n.1 (3d Cir. 2003) (stating that a claimant's eligibility for benefits ceases with substantial evidence of medical improvement).

[3]  "Substantial gainful activity" is work activity that involves "doing significant physical or mental activities," done "for pay or profit."  20 C.F.R. §§ 404.1572, 416.972.

[4]  For the Supplemental Security Income claim, the performance of substantial gainful activity is not a consideration in determining whether the claimant's disability remains.  20 C.F.R. § 416.994(b)(5).

medical improvement has occurred.  Medical improvement is any decrease in medical severity of the impairments as established by improvement in symptoms, signs, and/or laboratory findings.[5]  20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).  If medical improvement has occurred, the analysis proceeds to Step Four.  If not, the analysis skips to Step Five.  20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii).

- Step Four: Ability To Work.  At Step Four, the Commissioner must determine whether the medical improvement found in Step Three is related to the ability to work.  20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(5)(iii).  Medical improvement is related to the ability to work if it results in an increase in the claimant's RFC.  20 C.F.R. §§ 404.1594(b)(3), 416.994(b)(1)(iii).  If the improvement results in such an increase, the analysis proceeds to Step Six.  If not, the analysis proceeds to Step Five.  20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(5)(iii).

- Step Five: Exceptions To Medical Improvement.  At Step Five, the Commissioner determines if one of two sets of exceptions to medical improvement applies.[6]  20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).  If one of the exceptions from the first group applies, the analysis proceeds to the next Step.  20 C.F.R. §§ 404.1594(d), 416.994(b)(3).  If one of the exceptions from the second group applies, the claimant's disability ends.  20 C.F.R. §§ 404.1594(e), 416.994(b)(4).  If no exception applies, the claimant's disability continues.  20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).

---

[5]  The appropriate legal standard with which to review medical improvement determinations was set forth in Kuzmin v. Schweiker, 714 F.2d 1233 (3d Cir. 1983).  There, the Third Circuit held that once the claimant has introduced evidence that his condition remains the same as it was for the period already determined to be under disability, the burden then shifts to the defendant to prove "that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity."  Id. at 1237.  This standard was upheld in Chrupcala v. Heckler, 829 F.2d 1269, 1274 (3d Cir. 1987), where the Third Circuit stated that "[f]airness would certainly seem to require an adequate showing of medical improvement whenever an ALJ determines that disability should be limited to a specific period."  Id.

[6]  The Commissioner need only consider these exceptions if there is neither medical improvement nor medical improvement related to the ability to work.  20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).  If either condition is present, the analysis proceeds to Step Six.  Id.
   The first group of exceptions applies where substantial evidence shows any of the following: (1) that the claimant "is [the] beneficiary of advances in medical or vocational therapy or technology;" (2) that the claimant has "undergone vocational therapy;" (3) that "based on new or improved diagnostic or evaluative techniques [the] impairment(s) [are] not as disabling as . . . considered to be at the time of the most recent favorable decision;" or (4) "that any prior disability decision was in error."  20 C.F.R §§ 404.1594(d), 416.994(b)(3).
   The second set of exceptions applies where substantial evidence shows any of the following: (1) that "a prior determination or decision was fraudulently obtained;" (2) that the claimant has not cooperated with Social Security officials; (3) that the claimant cannot be found; or (4) that the claimant failed to follow prescribed treatment.  20 C.F.R. §§ 404.1594(e), 416.994(b)(4).

- Step Six: Severity And Ability To Do Basic Work.  At Step Six, the Commissioner must determine whether the claimant's impairments in combination are severe.  20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).  If the claimant's current impairments in combination do not significantly limit the claimant's physical or mental abilities to do "basic work," these impairments will not be considered severe in nature.[7]  There, the disability will be found to have terminated.  Id.  If there is significant limitation of the claimant's ability to do basic work activities, the analysis proceeds to the next Step.  Id.

- Step Seven: Past Relevant Work.  At Step Seven, the Commissioner must determine if the claimant can perform past relevant work.  20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi).  If the claimant is able to do past relevant work, the disability has ended.  Id.  If the claimant cannot perform past relevant work, the analysis proceeds to the last Step.  Id.

- Step Eight: Other Work.  At the final Step, the Commissioner must determine whether other work exists that the claimant can perform, given his RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).  If the claimant can perform other work based on these factors, the disability terminates.  If the claimant cannot perform other work, the disability continues.  Id.

    3.      The ALJ's Decision

Applying this eight-step analysis, and upon review of the entire record, ALJ Lissek first

found that for the period during which disability had already been established (August 1, 2001 to

November 11, 2002), Plaintiff suffered from medically determinable physical and mental

impairments, with the physical impairment depriving Plaintiff of the capacity to engage in even

sedentary work.  (Finding 1, Tr. 418.)

At Step One, the ALJ found that Plaintiff did not resume substantial gainful activity on or

after November 12, 2002.  (Finding 2, Tr. 418.)  At Step Two, the ALJ found that since

November 12, 2002, Plaintiff did not have an impairment or combination of impairments that

"meets or medically equals" the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P,

---

[7]  "Basic work" is defined as the "the abilities and aptitudes necessary to do most jobs," including abilities such as "walking, standing, pushing, pulling, reaching and carrying," and "nonexertional abilities," such as "seeing, hearing, speaking, remembering, using judgment, dealing with changes and dealing with both supervisors and fellow workers."  20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv).

App. 1.[8]  (Finding 4, Tr. 418.)

At Step Three, the ALJ found that Plaintiff exhibited medical improvement as of November 12, 2002.  (Finding 5, Tr. 419.)  For this finding, the ALJ determined that there was a decrease in the severity of Plaintiff's physical impairment on November 12, 2002, based on that day's functional capacity evaluation, which found Plaintiff able to perform sedentary work.  Id.

At Step Four, the ALJ found Plaintiff's medical improvement to be related to his ability to work, because it resulted in an increase in Plaintiff's RFC after November 11, 2002.  (Finding 7, Tr. 426.)  The ALJ determined that by November 12, 2002, Plaintiff could perform "substantially the full range of unskilled 'sedentary' work."  (Finding 6, Tr. 419-25.)  In evaluating Step Four, the ALJ cited, *inter alia*, the reports of Plaintiff's reviewing physician and the report of the Kinematic consultants, stating that Plaintiff was able to lift at least 10 pounds "occasionally," was able to sit for prolonged periods, and could push, pull, squat, and stand, if given periodic postural breaks.  (Finding 6, Tr. 422.)

Given that relation to the ability to work, the ALJ appropriately proceeded to Step Six, and found that Plaintiff's back injury caused "more than minimal limitation" in Plaintiff's ability to perform basic work activities.  (Finding 8, Tr. 426.)  At Step Seven, the ALJ found that Plaintiff was not able to perform his past relevant work, despite the medical improvement.  (Finding 9, Tr. 426.)  The ALJ found that each of Plaintiff's most recent jobs involved a "good deal" of standing or walking during the work day, as well as lifting or carrying more than the 10-pound maximum inherent to the sedentary RFC.  Id.

---

[8]  In making this finding, the ALJ first cited Listing 1.04 (disorders of the spine), and found that Plaintiff's symptoms did not meet the criteria of that Listing.  (Finding 4, Tr. 418-19)  Further, the ALJ stated that Plaintiff's mental impairment did not meet the criteria for Listing 12.04 (Affective Disorders), determined to be the most similar Listing when considering Plaintiff's limitations on and after November 12, 2002.  Id.

At the last Step, the ALJ found Plaintiff capable of performing other work: specifically, the full range of unskilled sedentary work.  (Finding 13, Tr. 427.)  In making this finding, the ALJ considered Plaintiff's age, education, and work experience, and applied Medical-Vocational Rule 201.27, which directed a finding of "not disabled."  Id.  Accordingly, the ALJ denied Plaintiff's claim for benefits after November 11, 2002.  Id.

## II.  DISCUSSION

### A.  Standard Of Review

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record supporting his decision.  42 U.S.C. § 405(g); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record.  Simmonds v. Hecker, 807 F.2d 54, 58 (3d Cir. 1986).

### B.  Review Of The Commissioner's Decision

Plaintiff challenges the decision of the Commissioner on the grounds that the ALJ's denial of benefits is not supported by substantial evidence.  Specifically, he argues that the ALJ erred by: (1) finding medical improvement without substantial evidence in the record, (Pl. Br. 7-15); (2) failing to find a severe mental impairment, (Pl. Br. 15-23); (3) applying a RFC not supported by substantial evidence, (Pl. Br. 23-27); and (4) failing to obtain vocational expert testimony.  (Pl. Br. 27-28.)  The Court will address each argument in turn.

11

1.    Failing To Properly Apply Medical Improvement Standards

The ALJ found at Step Three that Plaintiff exhibited medical improvement as of

November 12, 2002.  (Finding 5, Tr. 419.)  Plaintiff argues that this finding is in error because

there is not substantial evidence in the record supporting such medical improvement.  (Pl. Br. 7-

15.)  Plaintiff submits that the ALJ did not conduct a comparison of Plaintiff's symptoms from

before November 12, 2002 with those observed after that date, and that the ALJ improperly relied

on evaluations by a physical therapist and biomechanist, while discounting the evaluations of two

Workers' Compensation professionals.  Id.  These contentions are without merit.

First, the ALJ's detailed decision evidences that she properly applied the medical

improvement standard by carefully comparing the medical evaluations of Plaintiff from before

November 12, 2002 with those from after.  20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(1)(vii); (Tr.

419-25.)  For example, the ALJ cited medical and clinical evidence from the period of disability,

describing Plaintiff's markedly abnormal gait, reduced range of motion of the lumbar spine, and

one or more neurological abnormalities.  (Tr. 419.)  The ALJ also cited Plaintiff's complaints of

continuing lower back and leg pain, with the pain worsening upon sitting or standing.  (Tr. 421.)

She then contrasted these findings with medical and clinical observations from November 12,

2002 and thereafter.  Id.  The ALJ cited the November 12, 2002 findings of the Kinematic

consultants, noting Plaintiff's "normal" reflexes, and that Plaintiff's gait was markedly improved,

indicating only moderate residual back and extremity issues.  (Tr. 419-21.)  The ALJ noted that at

this evaluation, Plaintiff was able perform the requirements of sedentary work, including lifting

10 to 20 pounds, with occasional standing, walking, and bending.  (Tr. 422.)  Plaintiff was also

able to push or pull up to 21 pounds, and to stand and sit with periodic posture breaks.  Id.

Importantly, the ALJ also noted that Plaintiff was observed to be consciously exaggerating his physical limitations in strength and movement, which drew into question the credibility of Plaintiff's complaints.  Id.

In addition to the functional capacity evaluation, the ALJ also noted the repeated post-2002 findings of intact manumotor function of the lower extremities, symmetrical deep tendon reflexes, grossly intact sensation, and leg raising that was equivocal, at worst.  Id.  Significantly, the ALJ noted that Dr. Massoud, Plaintiff's treating physician before and after November 12, 2002, acknowledged Plaintiff's ability to engage in "light duty" work.  Id.  Dr. Massoud reported that Plaintiff was "improving slowly as expected" following the surgery, with Plaintiff exhibiting no distinct tenderness to palpation in the lumbar spine as of May 2002.  (Tr. 279-81.)  By September 2004, Massoud reported Plaintiff as exhibiting "normal" muscle tone and strength.  (Tr. 467.)  Further, the ALJ found that since 2002, Plaintiff had not visited any emergency room, nor was there any inpatient hospital stay, surgery, or formal physical therapy.  (Tr. 421.)  Based on this evidence, the ALJ determined that beginning on November 12, 2002, Plaintiff showed improved functioning, and a decrease in the severity of his physical impairment.  (Tr. 419-20.)

Second, the ALJ did not err in relying on the findings of the physical therapist and biomechanist from Kinematic Consultants, Inc.  As noted by the ALJ, they are specialists in their field, and examined Plaintiff personally, using "established protocols" and "specialized equipment."  (Tr. 422.)  Their findings are consistent with the record as a whole, which includes evaluations by Plaintiff's treating physician finding improved ability to lift, push, and pull, and recommending Plaintiff for sedentary work.  Id.  Under Social Security regulations, these factors weigh in favor of giving the consultants' opinions significant weight.  See 20 C.F.R. §§

404.1527(d), 416.927(d) (setting forth the factors used in deciding the weight accorded to opinion evidence, including, among others, the examining relationship, the consistency of the opinion against the record as a whole, and the specialization of the examiner).

Finally, the ALJ did not err in discounting the opinions of Drs. Kulkarni and Wong, who described Plaintiff as being "100% disabled" and "totally disabled," respectively, in Workers' Compensation evaluations conducted as late as January 2007. (Tr. 419.)  Far from charging these professionals with "fraud," as Plaintiff contends, (Pl. Br. 14), the ALJ chose to give their opinions less weight, based upon reasons stated by the ALJ.  First, these opinions diverged from other professionals' examinations from that period, including that of Plaintiff's treating physician, who found that Plaintiff was able to do some work.  (Tr. 422); see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("If any of the evidence in [the] case record . . . is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have.").  Second, these evaluations took place as part of Workers' Compensation reviews, and therefore are not binding on a determination made under Social Security regulations. See 20 C.F.R. §§ 404.1504, 416.904 ("A decision by . . . any other governmental agency about whether you are disabled . . . is not binding on us.").

In sum, the ALJ's finding of medical improvement was reached after applying the appropriate standard, utilizing direct comparisons of Plaintiff's physical and mental impairments before and after November 12, 2002.  Because of the substantial evidence in the record of medical improvement between those periods, including evidence of Plaintiff's ability to undertake sedentary work, the ALJ did not err in finding medical improvement on and after November 11, 2002.

14

2.      <u>Failure To Find A Severe Mental Impairment</u>

Plaintiff next argues that the ALJ erred by finding Plaintiff's mental impairment to be non-severe.  (Pl. Br. 15-23.)  To determine whether the record supports a finding of a "severe" mental impairment, the ALJ undertakes a two-part analysis: First, the ALJ must evaluate whether the symptoms, signs, and laboratory findings in the record support the finding of an impairment. 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d).  Second, the ALJ must rate the claimant's limitations in the following areas to determine if that mental impairment is sufficiently severe: (1) the claimant's activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  <u>Id.</u>  If the ALJ rates a claimant's limitations in the first three functional areas as "none" or "mild," and in the fourth as "none," she will conclude that the alleged impairment is not severe.  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Applying this analysis, the ALJ first found that Plaintiff had a medically determinable mental impairment: an affective disorder.  (Tr. 425.)  Turning to the four functional areas, the ALJ found Plaintiff to exhibit only a "mild" impairment as to the first three, and noted that there were no episodes of decompensation meeting the regulatory definition.  (Tr. 425); 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.00(c)(4).  These findings are supported by substantial evidence.

While acknowledging Plaintiff's depressed mood following his surgery, the ALJ noted the "very limited" outward signs of a mental impairment throughout the period in question.  (Tr. 423.)  In November 2002, Plaintiff's day-to-day activities included independent use of the kitchen to prepare food, social visits with friends and family, and trips outside to go shopping with his wife.  (Tr. 212-18.)  Plaintiff was able to bathe and dress with assistance.  <u>Id.</u>  Based on these observations, Dr. Shapiro squarely reported Plaintiff to have only a mild restriction on activities

15

of daily living.  (Tr. 369.)

As to social functioning, concentration, persistence, and pace, Dr. Dicovskiy recited many of Plaintiff's subjective complaints, but found Plaintiff to be functional, and assessed a GAF score of 70, indicating only mild difficulty in social or occupational functioning.[9]  (Tr. 424.)  Consistent with that evaluation, Dr. Fulford reported that Plaintiff had fair insight, and the ability to follow simple commands.  (Tr. 349-50, 423.)  Plaintiff exhibited no looseness of association, circumstantial, or tangential thinking, and displayed a fair personal and current fund of information, with good mental control.  Id.  While Dr. Shapiro did describe Plaintiff's difficulties in these areas as "moderate," the ALJ found that description to be inconsistent with the other evidence, and with Dr. Shapiro's own conclusion that Plaintiff was capable of performing "simple repetitive work."[10]  (Tr. 425.)  The ALJ noted that the only evidence of less than fair mental abilities were slow speech, low volume, mildly reduced memory and concentration, and somewhat impaired judgment.  (Tr. 423.)  At no time did any professional determine that Plaintiff required hospitalization for psychiatric treatment, nor did Plaintiff ever receive a prescription to address any mental impairment.  Id.  The ALJ found that Plaintiff's treating physician, Dr. Massoud, never once in his evaluations mentioned any indication of mental impairment.[11]  Id.

---

[9]  Clinicians use the Global Assessment of Functioning (GAF) score (measured from 0 to 100, with a higher score indicating higher functionality) to report an individual's overall level of functioning.  See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision, 4th ed. 2000) (1994).

[10]  Significantly, Dr. Shapiro, a Social Security agency professional, indicated that even though Plaintiff exhibited major depression, the impairment did not satisfy the agency's enumerated diagnostic criteria for an affective disorder.  (Tr. 362.)

[11]  Third Circuit precedent requires that an ALJ accord a treating physician's opinion great weight, especially when the opinion "reflects expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

Plaintiff saw his next treating physician, Dr. Dicovskiy, for over a year without any recorded sign or symptom of a mental impairment.  (Tr. 424.)  It was only after filing for benefits that Plaintiff sought psychiatric treatment.  Id.  Taken together, this evidence provides substantial support for the ALJ's finding of a non-severe mental impairment.

The ALJ gave Plaintiff's complaints regarding his mental symptoms serious consideration, as is her duty.  See Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981).  The ALJ dedicated 13 paragraphs, spanning three pages of the opinion, to an evaluation of Plaintiff's subjective complaints of mental impairment, and properly weighed Plaintiff's testimony against the objective medical evidence in the record.  (Tr. 423-26.)  In doing so, the ALJ followed the criteria prescribed by the Social Security regulations, and ultimately concluded that Plaintiff's complaints were not entirely credible.[12]  (Tr. 421.)  This conclusion is well-supported by the record.

Rather than substituting her own lay opinion, as Plaintiff contends, (Pl. Br. 15), the ALJ summarized the recorded observations of Plaintiff's mental evaluations and Plaintiff's own complaints, including symptoms such as difficulty concentrating and thinking, and diagnoses ranging from adjustment disorder to major depressive disorder.  (Tr. 423.)  However, the ALJ properly noted that the objective evidence does not support the statements concerning the extent and effect of Plaintiff's mental symptoms, and appropriately minimized the weight of those statements.  Id.  The ALJ found that the only observed abnormalities Plaintiff exhibited and did

---

[12]   The ALJ states that, in evaluating the subjective complaints, she gave careful consideration to: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that Plaintiff receives or has received for relief of pain or other symptoms; (6) any measures other than treatment Plaintiff uses or has used to relieve pain or other symptoms; and (7) other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms.  (Tr. 420.)

not self-report were anxious affect and fair insight and judgment.  Id.  Accordingly, the ALJ properly discounted Plaintiff's description of auditory hallucinations, an overdose, and fair to poor impulse control, none of which found objective support in the record.  Id.

Similarly, the ALJ appropriately gave less weight to the opinions of Drs. Johnson and Wong.  (Tr. 424-25.)  The ALJ properly noted that Dr. Johnson's evaluation of mental disability, upon which Plaintiff relies heavily for evidence of mental impairment, does not offer objective bases for its ultimate conclusion, and is cast into further doubt by Plaintiff's longtime treating physician not once having raised the question of mental impairment.  Id.

Finally, Plaintiff alternatively argues that the record at least leaves a reasonable doubt as to the severity of his mental impairment, requiring the ALJ to resolve that doubt in favor of Plaintiff.  (Pl. Br. 20-23.)  In support of his position, Plaintiff cites the Supreme Court's decision in Bowen v. Yuckert, 482 U.S. 137, 158 (1987); (Pl. Br. 22.)  However, as Bowen states, such "benefit of the doubt" need only be given where the adjudicator is unable to determine clearly the effect of an impairment on the individual's ability to do basic work activities.  Bowen, 482 U.S. at 158.  There is no such ambiguity here.  The ALJ determined the effect of Plaintiff's mental condition on his ability to perform basic work from the evaluations of Drs. Dicovskiy, Fulford, Kamin, Massoud, and Shapiro, none of whom indicated that Plaintiff was unable to complete basic work activities.  (Tr. 424-25.)  Moreover, at least three of these doctors squarely opined that Plaintiff could perform such work.  Id.  Dr. Massoud twice found Plaintiff able to carry on light duty work and capable of completing an eight-hour workday with breaks, (Tr. 459, 465), and Drs. Shapiro and Kamin likewise found Plaintiff able to complete "simple repetitive work."  (Tr. 374.)  Therefore, the ALJ did not err in finding Plaintiff's mental impairment was not severe.

18

3.      Lack Of Substantial Evidence For RFC Determination

At Step Seven, the ALJ found that Plaintiff possessed the RFC for "substantially the full range of unskilled 'sedentary' work as defined in 20 C.F.R. §§ 404.1567 and 416.967."[13]  (Tr. 419.)  Plaintiff argues that this finding is not supported by substantial evidence, and that the ALJ improperly relied on her own lay opinion, reaching a conclusion inconsistent with the thrust of state agency determinations.  (Pl. Br. 23-27.)

To the contrary, the ALJ specifically cited the medical evidence upon which she relied in reaching her RFC determination, and extensively discussed that evidence over seven pages of detailed findings.  (Tr. 419-25.)  The evidence cited provides substantial support for the finding that Plaintiff retained the RFC to perform the full range of unskilled sedentary work.  Most notably, the ALJ cited the evaluations of Dr. Massoud and the Kinematic consultants, all of whom identified a restriction on repetitive lifting and bending, but who reported Plaintiff's ability to perform the requirements of sedentary work, including lifting 10 to 20 pounds, with occasional but not prolonged standing, walking, and bending.  (Tr. 422.)  The consultants noted Plaintiff's ability to push or pull 18 to 21 pounds, and to stand and sit with 10-minute posture breaks every 1.5 hours.  Id.  Importantly, the ALJ also considered the opinion of at least two reviewing sources suggesting that Plaintiff deliberately magnified his physical limitations in strength and movement.  (Tr. 419.)  The ALJ also duly noted the evidence of mental impairment, properly relying on the Social Security determination that even considering Plaintiff's "mild" limitations, that he could still perform unskilled work.  (Tr. 424-25.)  Viewing the record as a whole, there is substantial evidence that Plaintiff possessed the RFC to perform unskilled sedentary work.

---

[13] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles . . . . Although a sedentary job is defined as one which involves sitting . . . . [j]obs are sedentary if walking and standing are required occasionally . . . ." 20 C.F.R. §§ 404.1567, 416.967.

4.   Application Of The Medical-Vocational Guidelines

Finally, Plaintiff argues that the ALJ erred in reaching the conclusion that Plaintiff could perform unskilled work based on direct application of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, (the "Grid").  (Pl. Br. 27-28.)  In making this argument, Plaintiff contends that the ALJ should have found a "severe" mental impairment, which would have, in turn, precluded application of the Grid.

However, the application of the Grid was proper here, based on the substantial evidence in the record that Plaintiff did not have a severe mental impairment.  The regulations preclude application of the Grid in cases where a non-exertional limitation would significantly limit Plaintiff's ability to perform at a designated exertional level.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2).  Yet, as discussed above, the ALJ duly weighed the evidence in the record, considering both the subjective complaints of mental impairment and the objective evidence from numerous reviewing medical sources, and found that Plaintiff did not have a severe mental impairment.  (Tr. 424-25.)  Ultimately, the ALJ correctly utilized the Grid, identifying Plaintiff as a "younger individual," applying his high-school educational level and unskilled and sedentary RFC to reach a finding of "not disabled" under Rule 201.27.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(1).  This reliance was proper.  See Heckler v. Campbell, 461 U.S. 458 (1983) (holding reliance on the Grid to be proper in determining a claimant's qualifications for work).

20

### III.  CONCLUSION & ORDER

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff is no longer disabled is based on substantial evidence.  Accordingly, this Court will **AFFIRM** the Commissioner's decision.

Therefore, **IT IS** on this 24th day of November, 2009, hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

**/s/ Faith S. Hochberg**
**Hon. Faith S. Hochberg, U.S.D.J.**
